UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK LEE ONG,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF AMADOR, MICHAEL PARKS, JUSTIN CARDINALE, CRAIG ZARAGOZA, BOB BIANCHI, and DOES 1 through 100, inclusive;<br><br>Defendants. | No. 2:20-cv-00253-TLN-KJN<br><br><br><br>**ORDER** |

This matter is before the Court on Motions to Dismiss brought by the following Defendants: Sheriffs Michael Parks ("Parks") and Justin Cardinale[1] ("Cardinale") and the County of Amador ("County") (collectively, "County Defendants") (ECF No. 5); and California Highway Patrol ("CHP") Officers Craig Zaragoza ("Zaragoza") and Bob Bianchi ("Bianchi") (collectively, "CHP Defendants") (ECF No. 9) (collectively, "Defendants"). Plaintiff Patrick Lee Ong ("Plaintiff") opposed both motions. (ECF No. 11.) County Defendants and CHP Defendants each filed replies. (ECF Nos. 12, 13.) After carefully considering the parties' briefings and for

---

[1] Plaintiff appears to interchangeably refer to Cardinale as "Cardinale" and "Cardinle" in his briefings. The Court will refer to this Defendant as "Cardinale" herein.

1

the reasons set forth below, CHP Defendants' Motion to Dismiss (ECF No. 9) is GRANTED and County Defendants' Motion to Dismiss (ECF No. 5) is GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2019, Plaintiff and several of his friends — including John Doe ("John") and Jane Doe ("Jane") — were at Plaintiff's residence for a "family get together." (ECF No. 4 ¶¶ 14–15.) During the evening, Jane became intoxicated and engaged in a physical altercation with John, which resulted in scratches on John's face. (*Id.* at ¶ 16.) Jane "insisted on driving while intoxicated." (*Id.* at ¶ 17.) In response, John — who was in possession of the keys to their vehicle at that time — threw the keys into a forest area (presumably abutting Plaintiff's home). (*Id.*) John then went to sleep in Plaintiff's residence. (*Id.* at ¶ 18.)

Sometime thereafter, Jane called law enforcement, reporting her vehicle keys were lost and "she desired to leave and go home." (*Id.* at ¶ 19.) Jane located the keys and left approximately 20 minutes before law enforcement's arrival at Plaintiff's property. (*Id.*)

At 11:33 p.m., approximately three hours after the altercation between Jane and John occurred, Defendants arrived at Plaintiff's property. (*Id.* at ¶¶ 18–20.) Plaintiff met Sheriff Cardinale in his driveway. (*Id.* at ¶ 22.) Cardinale told Plaintiff he was responding to "a False Imprisonment and Domestic Violence call." (*Id.* at ¶ 23.) In response, Plaintiff stated he "had located [Jane's] keys."[2] (*Id.* at ¶ 24.) Plaintiff observed additional unnamed deputies as well as CHP Officers Zaragoza and Bianchi arrive at his property and advance towards his front door. (*Id.* at ¶¶ 25–26.) Plaintiff told Cardinale that John was asleep inside Plaintiff's residence and Jane had already left. (*Id.* at ¶ 25.) Cardinale asked to speak to John. (*Id.* at ¶ 27.) However, Plaintiff "refused to produce John," and informed Cardinale and the other law enforcement officers they did not have permission to enter his home. (*Id.* at ¶¶ 28–29.)

Plaintiff subsequently moved towards the entrance of his residence, at which time Cardinale stopped Plaintiff, placed him in handcuffs, and "informed [him] that [he] was being

---

[2] Though the First Amended Complaint does not explicitly explain this, based on Plaintiff's response, it appears Plaintiff was aware that Jane called the police before she left Plaintiff's house and that Defendants were responding to her call.

2

detained for officer safety only." (*Id.* at ¶¶ 29–30.) Cardinale requested Plaintiff to stand in front of his truck, which was parked in his driveway. (*Id.* at ¶ 31.) An unspecified officer then instructed Plaintiff to "lean back against [his] truck," and Plaintiff complied. (*Id.*) However, Plaintiff "found the position uncomfortable" and began experiencing unspecified pain due to a "previous lower back injury." (*Id.*) Plaintiff began to readjust his footing but an officer — again unspecified — "yelled at" Plaintiff and "commanded [him] not to move." (*Id.*)

While Plaintiff remained next to his truck, Cardinale pounded on Plaintiff's front door. (*Id.* at ¶¶ 31–32.) Plaintiff again told Cardinale that "he did not have permission to enter [Plaintiff's] house." (*Id.* at ¶ 32.) An individual identified as "Jane Doe 2"[3] ("Jane 2") answered the door and Cardinale inquired from Jane 2 about John's whereabouts. (*Id.*) Plaintiff told Jane 2 "the Deputies did not have permission to enter the house and to not let them in." (*Id.*) Jane 2 told Cardinale she would wake John because he was sleeping. (*Id.* at ¶¶ 33, 35.) Plaintiff alleges Cardinale appeared as though he were about to enter the house at that time. (*Id.* at ¶ 34.) However, Jane 2 proceeded to go back into the house and shut the door behind her. (*Id.* at ¶ 35.)

Next, Plaintiff alleges additional unidentified deputies — as well as nonparty Amador County Sherriff Deputy Sergeant Parker — "began merging" around Plaintiff's garage and porch. (*Id.* at ¶ 36.) Zaragoza and Bianchi were, at this time, purportedly standing "slightly behind [Plaintiff]."[4] (*Id.*) John emerged from inside Plaintiff's residence. (*Id.*) Unspecified deputies directed John to the front of Plaintiff's garage where they began questioning and searching him. (*Id.*)

Plaintiff "reminded John [] of his [Fifth] Amendment Rights to remain silent and that he did not have to answer any of the deputy's questions if he did not want to." (*Id.*) Sheriff Parks "yelled at [Plaintiff] to shut up." (*Id.* at ¶ 37.) Plaintiff replied that he "had the right to talk under the [First] Amendment." (*Id.* at ¶ 37.) In response, Parks told Plaintiff he would be arrested for

---

[3] It is unclear from the pleadings whether Jane 2 was a resident or visitor of the house. However, given Plaintiff's directions to Jane 2 shortly thereafter, it is reasonably inferred that Jane 2 did not reside at the house.

[4] Plaintiff asserts no further factual allegations regarding the CHP Defendants. (*See id.*)

violating California Penal Code § 148 ("§ 148") if he talked again.[5]  (*Id.* at ¶ 38.)  Plaintiff alleges that during this time, "he was not doing anything" other than "observing the incident," and that "[Cardinale] and John [] were still fifteen to twenty feet away from [Plaintiff] . . . engaged in conversation."  (*Id.* at ¶ 39.)

Plaintiff then asked Parks, "[W]ould you arrest me [] for a single statement and violate my [First] Amendment rights[?]"  (*Id.* at ¶ 40.)  In response, Parks "exploded verbally" and ordered one of his Deputies to arrest Plaintiff for violating § 148.  (*Id.*)  Parks then "directed the other deputies and law enforcement to place [Plaintiff] in a patrol car."  (*Id.* at ¶ 41.)  An unidentified deputy or deputies searched Plaintiff, "removed [his] back brace, which was under [his] shirt, and . . . then placed [Plaintiff] into the rear of a patrol vehicle."  (*Id.*)  Plaintiff alleges that, during this time, he was not given any "repetitive commands" that he disobeyed.  (*Id.* at ¶ 42.)  Cardinale was still speaking with John and was not a part of the arrest.  (*Id.* at ¶ 41.)

After questioning John, Cardinale "entered the driver seat of the patrol vehicle [Plaintiff] was in."  (*Id.* at ¶¶ 43–44.)  On entering the vehicle, Cardinale allegedly informed Plaintiff that "nobody ordered [him] to arrest [Plaintiff]; that [Cardinale] had already decided to do that."  (*Id.* at ¶ 44.)  An unidentified deputy or deputies drove Plaintiff to the Amador County Jail, where Plaintiff was booked and given a breathalyzer test.  (*Id.* at ¶ 45.)  The breathalyzer test reflected Plaintiff had a blood alcohol level of 0.00.  (*Id.*)  Plaintiff remained in custody for an unspecified amount of time until he was "bail[ed] out."  (*Id.*)  The Amador County District Attorney's Office never charged Plaintiff with any offense.  (*Id.*)

Plaintiff initiated this action on February 3, 2020.  (ECF No. 1.)  The operative First Amended Complaint ("FAC") asserts the following federal and state claims: (1) excessive force; (2) false arrest; (3) substantive due process violation; (4) freedom of speech violation; (5) municipal liability; (6) assault; and (7) interference with civil rights in violation of California

///

---

[5] California Penal Code § 148 criminalizes "willful[] resist[ance], delay[], or obstruct[ion] [of] any public officer, [or] peace officer . . . discharge[ing] or attempt[ing] to discharge any duty of his or her office or employment . . . ."  Cal. Penal Code § 148(a)(1).

4

Civil Code § 52.1 (the Bane Act).[6]  (ECF No. 4 at 10–15.)  Claim Five is asserted against County only.  (*Id.* at 13–14.)  The remaining claims are asserted against Parks and Cardinale in their personal and official capacities, and Zaragoza and Bianchi in their individual capacities.  (*Id.* at 10–15.)

On April 23, 2020, County Defendants filed a motion to dismiss.  (ECF No. 5.)  On May 11, 2020, CHP Defendants also filed a motion to dismiss.  (ECF No. 9.)  Plaintiff opposed both motions to dismiss on May 28, 2020.  (ECF No. 11.)  County Defendants replied on June 3, 2020 (ECF No. 12), and CHP Defendants replied on June 4, 2020 (ECF No. 13).

## II.     STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

---

[6]     Plaintiff mislabels Claim Four as "Claim Three" and thereafter mislabels the remaining claims in the FAC.  (*See id.* at 12–14.)  The Court will refer to the claims by their correct numeric designations herein.

5

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, '[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

///

6

*Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

County Defendants move to dismiss all claims asserted against them in the FAC (Claims One through Seven) as follows: the FAC persistently and collectively treats the four individual Defendants as one unified actor and constitutes a "shotgun pleading" by failing to specifically state which facts support each claim; the FAC generically invokes the Fourteenth Amendment regarding seizure-related deprivations; and the FAC the FAC fails to allege sufficient facts to state claims with facial plausibility. (*See* ECF No. 5-1 at 9, 11–22.) County Defendants also argue Cardinale and Parks are entitled to qualified immunity on the federal claims. (*Id.* at 22–25.) CHP Defendants also seek dismissal of all claims on the basis that they cannot be liable for the actions of other parties and that Plaintiff fails to allege sufficient, non-conclusory facts to state any claim against Zaragoza or Bianchi. (ECF No. 9 at 2–3, 6–14.)

In opposition, Plaintiff argues he had a constitutional right to deny Defendants entry into his home and verbally protest their conduct, and that being arrested for doing so violated his state and federal rights.[7] (ECF No. 11 at 2–3, 13–15.) In light of his clearly established right to

---

[7] The Court notes — and Plaintiff concedes (*see* ECF No. 11 at 3 n.1) — the opposition additionally provides additional facts that are not contained in the FAC. As such, they are not

verbally protest, criticize, and challenge the officers' conduct, Plaintiff argues qualified immunity is inappropriate. (*Id.* at 9–10.) Plaintiff further argues CHP Defendants were "integral participants" to the unlawful arrest and therefore remain liable for the actions of the other officers on scene. (*Id.* at 10–15.) With respect to his municipal liability claims, Plaintiff argues Park and Cardinale's actions demonstrate a failure to train by County. (*Id.* at 15–16.) Finally, with respect to his remaining claims, Plaintiff argues he sufficiently pleaded a separate Fourteenth Amendment claim that "overlap[s]" with but does not duplicate his other claims, as well as an excessive force claim because he pleaded facts showing Defendants' actions were objectively unreasonable. (*Id.* at 16–19.) Plaintiff concedes his assault claim fails and that it should have been asserted as a battery claim. (*Id.* at 19.)

For the reasons discussed herein, the Court finds County Defendants' shotgun pleading argument is meritorious, thus warranting dismissal of the entire FAC pursuant to Rule 8. In light of this finding, the Court need not reach the remainder of the parties' arguments. Nonetheless, the Court is also cognizant of the fact that some of the remaining arguments raised in Defendants' motions are potentially dispositive of certain claims as a matter of law. Therefore, in the interests of judicial efficiency, the Court exercises its discretion to additionally address such arguments on the merits. To the extent Defendants' arguments overlap, the Court will address both motions to dismiss together.

        A.      "Shotgun" Pleading

Rule 8 requires "each averment of a pleading to be 'simple, concise, and direct.'" *See McHenry v. Renne*, 84 F.3d 1172, 1177–79 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"). To comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *Id.* at 1178. Further, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b).

---

considered here, other than for purposes of granting leave to amend. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

"Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim." *See In re Mortgages Ltd.*, No. 2:08-bk-07465-RJH, 2013 WL 1336830, at *12 (Bankr. D. Ariz. March 29, 2013); *Magulta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *see also Harrell v. Hornbrook Cmty. Serv. Dist.*, No. 2:14-cv-01595-KJM-GGH, 2015 WL 5329779, at *10 (E.D. Cal. Sept. 10, 2015). The instant FAC does both of these things and thus violates Rule 8, requiring that the complaint contain a "short and plain statement" of the entitlement to relief. Fed. R. Civ. P. 8. Plaintiff proffers a list of ambiguous — and at times, contradictory — factual allegations (*see* ECF No. 4 at 5–10), followed by a list of claims containing mere recitals of each claim's elements in the form of conclusory allegations (*see id.* at 10–15). Furthermore, the FAC incorporates by reference the 47 paragraphs of factual allegations that precede the claims, and the paragraphs of allegations in each preceding claim, without designating which facts underlie each claim. (*Id.*) Consequently, Plaintiff fails to clearly identify who performed certain alleged acts and altogether fails to identify which specific acts are allocated to which of his claims. Indeed, even if Plaintiff seeks to assert an "integral participants" argument against certain Defendants (*see* ECF No. 11 at 11–12), he must nevertheless allege facts describing the conduct of each of those Defendants to establish their individual liability based on more than "merely being present" during the alleged constitutional violation. *See Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002). Plaintiff fails to do this as well. Accordingly, the FAC runs afoul of Rule 8 and must be dismissed.

Nonetheless, amending the FAC to rectify this deficiency will facilitate the pleading process. Therefore, the FAC is DISMISSED with leave to amend, consistent with the findings discussed herein.

        B.       <u>Substantive Due Process Violation (Claim Three)</u>

In the interests of justice and judicial efficiency, the Court additionally addresses CHP Defendants' argument regarding Claim Three. CHP Defendants move to dismiss Claim Three, without leave to amend, on the basis that Plaintiff improperly brings his claim as a Fourteenth

///

Amendment substantive due process claim rather than a Fourth Amendment claim. (ECF No. 9 at 10–12.)

The Fourteenth Amendment Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This provision imposes 'procedural limitations on a State's power to take away protected entitlements.'" *Henneberry v. City of Newark*, No. 13-cv-05238-MEJ, 2014 WL 4978576, at *12 (N.D. Cal. Oct. 6, 2014) (quoting *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009)). More specifically, "[i]t provides individuals with the right to both substantive and procedural due process." *Id.* "However, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process [under the Fourteenth Amendment].'" *Id.* (quoting *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 853 (9th Cir. 2007)). Thus, the Ninth Circuit has held that "claims for arrest without probable cause or for excessive force are more appropriately brought under the Fourth Amendment." *Id.* (citing *Crown Point Dev., Inc.*, 506 F.3d at 853).

Here, Plaintiff's substantive due process claim alleges a violation of his Fourteenth Amendment rights on the grounds that law enforcement purportedly arrested Plaintiff without probable cause and used excessive force during the arrest. (*See* ECF No. 11 at 17.) These allegations "fall squarely within the ambit of the Fourth Amendment, and thus were improperly brought as a substantive due process violation claim under the Fourteenth Amendment. *Henneberry*, 2014 WL 4978576, at *12 (holding that Plaintiff's Fourteenth Amendment violation claims were improper as they were based on an arrest without probable cause and an officer's use of excessive force and thus should have been brought as a Fourth Amendment violation claim). Accordingly, Plaintiff's substantive due process claim is DISMISSED without leave to amend.

C.  Municipal Liability (Claim Five)

In the interests of justice and judicial efficiency, the Court additionally addresses County Defendants' argument regarding Claim Five. County Defendants argue Plaintiff's municipal liability (*Monell*) claim fails because Plaintiff fails to allege any facts related to a policy or

custom, and the allegations purportedly supporting the claim are "pure boilerplate." (ECF No. 5-1 at 17–19.) The Court agrees.

A municipal entity can be liable in a § 1983 case premised on either: (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Monell v. Dep't of Soc. Services of City of N.Y.*, 436 U.S. 658, 691 (1978)).

Where a *Monell* claim is premised on a policy of omission, such as failure to train or supervise, a plaintiff must show: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

"The custom or policy must be a deliberate choice to follow a course of action . . . made from various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (internal citations and quotation marks omitted). It must be so "persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Put another way, the practice must have been going on for a sufficient amount of time, such that the "frequency and consistency [of] the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *see also McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee.")). Deliberate indifference exists when a municipality "fail[s] to investigate and discipline employees in the face of widespread constitutional violations." *Hunter v. Cnty. of*

*Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011). Thus, to establish deliberate indifference, the plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

The Ninth Circuit specifically addressed the circumstances under which a *Monell* failure to train claim could be asserted:

> The first is a deficient training program, intended to apply over time to multiple employees. The continued adherence by policymakers to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the "deliberate indifference" — necessary to trigger municipal liability. Further, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury.

*Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (internal quotations and citations omitted) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 407–08).

Finally, a *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

> To survive a motion to dismiss, a plaintiff must do more than allege that a *Monell* defendant "maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint . . . Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e. excessive force) is insufficient.

*Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (internal citation omitted).

In the instant case, County Defendants are correct that Plaintiff has alleged no facts that establish a County custom, policy, or practice. Indeed, there are no allegations suggesting Plaintiff's case amounts to anything more than a "single occurrence of unconstitutional action by a non-policymaking employee." *McDade*, 223 F.3d at 1141; *Trevino*, 99 F.3d at 918. Finally, the

only allegations in the FAC that reference any custom or policy are entirely conclusory. (*See generally* ECF No. 4.)

In opposition, Plaintiff argues it is inferable, based on Park and Cardinale's demonstrated "unawareness of a citizen's constitutional right to challenge police [behavior]" (by arresting Plaintiff) that County failed to properly train its officers. (ECF No. 11 at 15–16.) However, this argument, raised for the first time in Plaintiff's oppositional papers, is not supported in law. *Schneider*, 151 F.3d at 1197 n.1 (court may not take into account new facts asserted in opposition to motion to dismiss); *see AE ex rel. Hernandez*, 666 F.3d at 637 (holding that *Monell* claims must be supported by sufficient underlying factual allegations in accordance with pleading standard set forth under *Twombly*, *Iqbal*, and their progeny). Accordingly, the *Monell* claim fails.

In light of Rule 8's liberal pleading standard, however, Plaintiff will be permitted one final opportunity to amend this claim. Accordingly, Claim Five is DISMISSED with leave to amend.

### D.   Assault (Claim Six)

Claim Six alleges assault. (ECF No. 4 at 14.) Plaintiff does not oppose Defendants' motions to dismiss this claim but rather concedes that his claim would be "better . . . plead[ed] as a claim for battery," and requests leave from the Court to "alter [his] allegations" accordingly. (ECF No. 11 at 19.) Accordingly, Plaintiff's assault claim is DISMISSED. The Court further emphasizes that Plaintiff, as master of his complaint, should take care to properly label his claims. Nonetheless, in light of Rule 8's liberal pleading standard and the interests of judicial economy, the Court will permit Plaintiff to amend the complaint to bring this claim as a battery claim and cure the deficiencies previously identified.

### E.   Qualified Immunity

Finally, the Court acknowledges County Defendants have raised a qualified immunity argument and briefly addresses it herein. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings. . . .").

A qualified immunity analysis requires determining: (1) whether facts alleged, taken in the light most favorable to the injured party, show the defendants' conduct violated a constitutional right; and (2) whether the right was clearly established. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (*en banc*) (citing *Saucier*, 533 U.S. at 201). With respect to the second prong, a court considers whether the contours of the right were sufficiently clear at the time the action occurred such that a "reasonable official would understand that what he is doing violates that right." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994). In the absence of "a case directly on point," the court may compare relevant "specific factors" to determine whether a reasonable officer would have known that the conduct in question was unlawful. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017). Further, where an officer's conduct "is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (citations omitted).

In light of the aforementioned ruling under Rule 8 and this early stage in the pleadings, the Court cannot determine whether the individual County Defendants are entitled to qualified immunity at this time. The Motion to Dismiss based on qualified immunity (ECF No. 5) is therefore DENIED as premature.

Nonetheless, the Court expresses some concern as to County Defendants' argument that there was no clearly established law prohibiting officers from "handcuffing and moving away from the door a home occupant witness who *voluntarily* speaks with the officer and states an intent to prevent the officer from attempting to question a felony suspect confirmed to be inside" (*see* ECF No. 5-1 at 24 (emphasis in original)), as this appears to mischaracterize Plaintiff's allegations and create facts not alleged. For example, no facts support the existence of a "felony suspect" where the FAC is silent as to whether Jane suffered any injuries during the altercation. (*See* ECF No. 4 at 5 (FAC only asserts John's face was scratched)); *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 966 (E.D. Cal. 2017) ("[U]nder California law, the distinction between felony and misdemeanor domestic violence is whether the victim has suffered a physical injury.").

Similarly, the allegations in the FAC do not support a reasonable inference that the purported suspect was "confirmed to be inside" at the time Plaintiff was arrested. To the contrary, the call Defendants were responding to was three hours stale and uncorroborated, and the caller had already left the premises by the time the officers arrived.

Nor do *Illinois v. Lidster* or *Arias v. Amador*, cases relied upon by Defendants (*see* ECF No. 5-1 at 24; ECF No. 13 at 4), appear comparable to the instant facts. In short, those cases relate to arresting or detaining persons in public places, where a confirmed violation of the law had occurred. *See Lidster*, 540 U.S. 419 (2004) (permitting sobriety checkpoints on public highway following the hit-and-run death of a bicyclist by a drunk driver); *Arias*, 61 F. Supp. 3d 972 (E.D. Cal. 2014) (upholding § 148(a)(1) arrest for impeding an investigation where, after participating in altercations in a public supermarket, the plaintiff refused to obey orders to be silent and directed profanity at officers as well as store patrons when the officers attempted to interview other witnesses in the store). Here, by contrast, Plaintiff was not the suspect of a crime but was arrested in his own driveway for refusing to consent to a warrantless search of his home and verbally challenging the officers' attempts to enter the home despite the lack of indicia of exigent circumstances. Thus, the factual circumstances currently alleged are more akin to the case law cited by Plaintiff and suggestive that a clearly established right was violated. *See Mackinney v. Nielsen*, 69 F.3d 1002, 1005–07 (9th Cir. 1995) (mere verbal exchange in which appellant initially refused to comply with officers' orders to desist a lawful activity did not support finding of probable cause to arrest appellant under § 148); *City of Houston v. Hill*, 482 U.S. 451, 453–54, 461 (1987) (arrest of appellee for yelling at police, even though he admittedly intended to interrupt their investigation of his friend's ongoing traffic violation, was unwarranted because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers"); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009) (it is clearly established that "a police officer may not enter a home to investigate a medical emergency or other immediate risk to life or limb unless he has 'reasonable grounds' to believe an emergency is at hand and that his immediate attention is required."); *Kaur*, 263 F. Supp. 3d at 966 (denying qualified immunity based on Ninth Circuit's finding that use of force during

response to domestic dispute call was not reasonable where "reported domestic dispute was not ongoing and the alleged victim was not in immediate danger"); *United States v. Struckman*, 603 F.3d 731, 743 (9th Cir. 2010) (reasonable suspicion based on third party report alone "cannot excuse a warrantless arrest inside a private home or its curtilage.").

### IV.  CONCLUSION

For the reasons set forth above, CHP Defendants' Motion to Dismiss (ECF No. 9) is hereby GRANTED and County Defendants' Motion to Dismiss (ECF No. 5) is hereby GRANTED in part and DENIED in part as follows:

1. Claims One (false arrest), Two (excessive force), Four (violation of freedom of speech), Five (municipal liability), Six (assault), and Seven (violation of Cal. Civ. Code § 52.1) are DISMISSED with leave to amend;

2. Claim Three (substantive due process under the Fourteenth Amendment) is DISMISSED without leave to amend; and

3. County Defendants' Motion to Dismiss Claims One through Four based on qualified immunity is DENIED without prejudice.

Plaintiff may file an amended complaint not later than 30 days from the date of electronic filing of this Order.  Defendants' responsive pleading is due not later than 21 days after Plaintiff files an amended complaint.

IT IS SO ORDERED.

Date: September 9, 2021

Troy L. Nunley
United States District Judge